We will call our second case this morning, number 16-1101, Jones v. John Does, 1-10, and SCO Silver Care Operations, LLC. And we have Mr. Weinberger and Mr. Miller. Take your time setting up. Whenever you're ready. Yes, good morning. Good morning. My name is Stuart Weinberger. I represent the appellant. I'd like to reserve three minutes for rebuttal. That's fine. At your discretion. May it please the Court, this case presents important issues of who decides disputed interpretations of collective bargaining agreement. Now, if a claim arises under both a collective bargaining agreement and the Fair Labor Standards Act, what is the correct procedural path for litigating that? If it arises under both, if it involves an interpretation or an application of the collective bargaining agreement, if that's what's needed to decide the filsa case, the Court should either stay the action, which it can, which we ask for in this case, or dismiss the action temporarily. If the case doesn't involve an interpretation under disputed provision, then the case would be litigated. This case falls on the former, what I just said, rather than the latter. There are disputed interpretations under the collective bargaining agreement in this case. This case involves claims by certified nurses' aides, who are referred to as CNAs, that they are on overtime. One of the claims arises out of differentials. Differentials isn't even a part of the CBA, though, right? Judge, the Supreme Court said there's 60 years of law. 60 years of law on this. The practices, the procedures, the policies, that's all part of the CBA. We can't write every single provision that's involved with the parties in a collective bargaining agreement. The documents, we couldn't. What part of the CBA is this involved with? Is it entitlement to additional pay, or is it how to compute what the litigants are seeking to get? Yes, Judge. It involves both. There's an overtime provision in the CBA and a provision regarding regular rate of pay. Is that at all disputed? Yes, it's disputed here. The issue is what is the regular rate of pay? How do you calculate this differential? Maybe you just said it, but rate of pay, how much an employee is supposed to get, as opposed to whether the employee is entitled in the first instance, which doesn't seem to be a matter under the collective bargaining agreement. Judge, it's the practice of what the pay stands for. Our position is that when we pay the differential, a component of the differential included the overtime. The employees dispute that. It's a math issue, isn't it? No, well, it's a math issue. Yes, if you believe, ultimately when that issue is determined, it's a math issue. But if you're right, and it's part of the differential which they disagree with, then it becomes a math issue. Before you get to the math issue, you have to decide whether it is or is not. And that's what is in dispute. This is similar to Vadino. In Vadino, there's a dispute of what the rate of pay is. Should it be a journeyman's rate or should it be a mother rate? And that's what this case is. This case comes down to an interpretation of what the practices were. A raised differential, if I understand the briefing, means basically that you get a little bit more money if you work a certain shift. It was done on that, yes. Maybe if you work the night shift, you're going to get a little bit more money. Maybe if you work the Sunday shift, you might realize a little bit more income. But how is the collective bargaining agreement going to determine that? Because it's the practices under. It's the consolidated real case. A collective bargaining agreement encompasses the broad spectrum of the parties' relationship. And this does. It talks about interpretations and applications. You have an application of what the regular rate of pay is. This is an important issue. You answered one of my questions according to the most broad language in the agreement, the custom and all that. What wouldn't be part of that? If anything had to do with money, would it be arbitrable then? That can't be. It would be against our bail case, wouldn't it? No, I am not saying that. I am not saying that. For example, if it were very clear that, just a simple example, $10 a week an employee gets paid, excuse me, $10 an hour, and you have to calculate the overtime based on $10 an hour, collective bargaining agreement states what it is. But when you have a dispute under the pay, how something is broken down, what the practices are, what that pay represents, that comes to the heart of collective bargaining. That's what the union is there for. The union is the collective bargaining representative. The court can't go look at the history, look at the practices, and say this rate is derived by this, this rate is derived by that. That's not what the court's function is. That is clearly the function of the arbitrator. That's a fundamental issue involving the collective bargaining representative and how employees have been paid. That would intrude the other way upon the collective bargaining process and upon the fill cert. Is our Bell decision consistent with what you're saying right now? Bell is absolutely consistent because Bell involved pay before and pay after. So if, in fact, you worked overtime, regardless of whether the collective bargaining agreement provided for it or not, how it dealt, that's a fill cert violation. This is a different thing. This is more of a video. This is a case where you can't determine the overtime question on the fill cert until you determine what the differential means. What does that represent? What was the practice under the collective bargaining? This is a fundamental pay issue. This is not something that you just look at and multiply time in half like in the Bell case where you worked overtime, you worked a little before and a little after. I'm sorry. So the question is whether this should be included as fill cert. This is a more fundamental question. Is it the case that I would have to look at the collective bargaining agreement in order to determine what a shift differential is and what a raise differential is? It's not defined. Not everything and not every pay practice can be defined in a collective bargaining agreement or every practice. That would be impossible to do. You said before, and then we can come back to Bell, that there was a custom and practice with regard to how payment differentials worked. What was the evidence of that? No, I didn't say Bell devolved. I said we'll come back to Bell. Let's forget Bell for the moment. So the payment differentials weren't explicitly dealt with in the CBA. No. And your argument, I assume, has to be that they were understood because of custom and practice over the years. Yes, Judge. And that I thought the claim was that the predecessor to Esther SilverCare also had these same payment differentials in play. Yes. So what you then have now coming up to Bell is you have an intertwining of a collective bargaining agreement with a statutory claim. And that creates, as Bell notes, venue selection issues. And the question then becomes what venue should we be in? And I assume then what you're saying is Rodino says that you start off with arbitration. Yes, Judge. We're saying that. Just quickly on this issue too, there's another component of the differential claim. There was a mistaken payment made for a few months by a clerk. That's part of two of the claims. Mazzaro and somebody else were the opt-ins. And to us, that's also a fundamental claim. This wasn't arbitrarily part of the regular payment. It was made by a payroll clerk. Now, that has to be determined fundamentally. If they're not entitled to the money, it's a mistake, a true debate. We'd love to get it back. There's practical issues, of course. That's something that an arbitrator has to decide. Was it part? Was it a mistake? Was it not? Again, it goes to the fundamental issues of the union as a collective bargaining. And this is a different kind of case than, like, the Bell case and some of the others where you're just calculating time and a half on something. That's not what this is about. And this is important because the court would have to, almost in the sense of the mistaken payment, get involved in whether it was or wasn't. The court isn't there to determine the wages. And also, quickly, it just goes to the same thing with the meal break. If they arbitrate the wage claims, the meal break claims, both, don't they still have a right thereafter to file an NFLSA claim in federal court? Yes. We don't dispute that. That's exactly what Bell says. Well, you go to arbitration first. You determine it. And then if there's a claim, there's a claim. And, again, it doesn't disappear. The FLSA claim doesn't disappear. It's just now you have an interpretation of how to deal with the FLSA claim. Can I ask you a practical question? Assume we agree with what you're saying. Isn't it a concern that, I mean, the judge certified the FLSA claim, so now notice can go out to employees, right? If this thing gets hung up in arbitration for a while, aren't those claims going to be time barred? Those FLSA claims? You know, eventually, let's say an arbitrator does make a decision, a year or two years down the road. Now the time limit is gone. Judge, I understand that argument. We wanted it a long time ago. We're not in fault in this. We did. I'm not suggesting you're in fault, but it's a practical matter. It is a practical matter. I can tell you the differentials. It's not that much of a practical matter because, as we say in the footnote, it was done away with in collective bargaining a year and a half. So that's not really that much of a practical thing. It is an issue of meal breaks. There's no question in that saying no. But what we're saying is there's a way to do things. And whether it's affected by the conditional certification and the notices doesn't matter. There's a process that has to be followed. But you're saying someone like an accountant cannot determine whether an employee is entitled to an additional $2.50 or $3 per hour based on a shift differential? We're saying you can't get to that until you decide. Like we said, if, for example, one of the shift differentials is a weekend, it's $3. We say $2 is for what it was and $1 was built in for the overtime. That's the practice. Now we say you can do that, but that's a dispute. And the only one who can determine that dispute would be the arbitrator. And just with respect to the meal breaks, we discuss, judge this issue. I mean, this is where we have a fundamental problem with the judge's decision. There's a dispute over the policy of the meal breaks. The plaintiffs will tell you it was a 30-minute meal break. We say no, it's not. That's actually not what was said. There's a dispute over the practice. We say, in fact, it was either 45 or 60, in effect. Is that because you include one of the breaks in the meal? We include one of the breaks. Again, we have different practices, which the judge will recognize. In four of the five sections, one 15-minute break was included. In the other section, a 60-minute break, a half-hour break was included. My time is up. That's all right. You're fine. You're on our time. Why did you wait for over a year to file a motion to compel arbitration? Judge, we waited because of the district court. And as you said before, there's an issue of why we had to wait. As you just said before, the Felicity case doesn't disappear. It's part of what gets determined. The number that's going to arbitration is part of the Felicity case. We had moved to dismiss. In fact, under Babcock, it's a real question whether it should be maintained anyway, but that's a different issue. We had moved to dismiss. We had to wait for the judge to determine whether there was causes of action. Once the judge determined there was causes of action, we moved immediately. We moved swiftly. We raised it as an affirmative defense in the answer, and we moved immediately. And, again, there's Third Circuit cases on this. Making a motion to dismiss doesn't preclude you from then saying the issue has to be arbitrated. And this is a labor case, and this is the very important distinction in this case. But if you wait a year, doesn't that tie in with Judge Chigares' question, is that every day that passes is a day that it may be too late to bring a Felsa claim in federal court? Well, the Felsa claim is brought. It's people who opt in. And people did opt in, a few people. That goes to the end, and we don't know if anybody's going to opt in in this case, frankly.  Obviously, we're here. So that's just the nature of a Felsa-collected action. That should not determine who decides the issues and stuff. That shouldn't be a factor of when a case should be arbitrated, should not be. And we raised this a while ago. And we believe it's grounded in applicable law. We're not looking to delay this. We didn't delay this. And that's what the facts are. You can look at the record. Can I ask you a question, just related to all that we've been talking about? Can a district judge then stay the Felsa action, preserving people's rights, maybe, and then go forward with the arbitration, as you suggest? But a practical concern, again, is all those people who have not opted in. What about their rights? While we are all doing what we do, the door's closing. A district judge, again, a collective action only means this is not a class action. It's a collective action. Right. You have to affirmatively opt in. That makes the assumption that people are going to affirmatively opt in. But notices haven't been sent out yet, right? Notices were not sent out. Okay. But I understand the issue. But it's just the process that we have to go through and what's required. Right. We all understand that this is a separate legal issue. And that may not even be relevant to the consideration. But, nonetheless, it's something practical. And we understand that. We understand that. I haven't had a look at the collective bargaining agreement, but does it discuss, does it even define differentials or regular rate of pay? It uses the term regular rate of pay, which by its definition would have to include under the law and under the contract whatever you're paying, whatever includes differentials, whatever it is. That's what the regular rate of pay, that's when somebody gets paid something, that's their regular rate of pay. And differentials is part of the regular rate of pay. So it really is, you know, to say it's not explicit, there are a lot of things, including regular rate of pay, that things aren't always explicit in the CBA. That's just the nature of collective bargaining, processes, bonuses, Thanksgiving turkeys, all things that, you know, come up and are part of practices that we can't, you know, that we can't take away, for example. Just a simple example, if you pay for a Christmas turkey over the course of the years, that actually becomes under the law, and we're a part of the collective bargaining agreement. That's not explicitly stated there. You could have hundreds of examples. You can't say everything in a collective bargaining agreement. It's impossible. Disputes arise every day. All right, thank you. We'll get you back on rebuttal. Mr. Miller? Mr. Miller? Your Honor, may it please the Court, my name is Matt Miller, attorney at Swartzwood, I represent the appellees. And I want to start with the discussion of the delay caused by appellants in seeking the motions to compel arbitration. My clients filed the collective action complaint in December of 2013. Appellant waited 13 and a half months before filing its motion to compel. We argue that they waived their right to file it. Well, let's go through the factors that we have here. The first factor is the timeliness or lack thereof of a motion to arbitrate. It was a year, and you say that was too long. Correct? That's correct. And didn't that result from the district court's delay in deciding the motion to dismiss? It was filed shortly after sober care filed its answer. So it filed its motion to compel arbitration three months after the district court finally denied the motion to dismiss. So it really wasn't a year, it was like three months, wasn't it? When we filed them, the appellees filed the complaint. All the claims were in there, the claim for differential, the claim for meal breaks. So they were on notice, they knew that they had an arbitration argument to make. But it took nine months to decide the motion to dismiss, which is not necessarily, with a very busy judge, that can happen. But after that was denied, they filed their motion to compel arbitration three months later. That's true. So it's not 12 months, it's three months. So delay doesn't necessarily favor you as much as it might appear at the outset. You can hardly blame them for moving. I mean, that's the quickest way to get rid of the lawsuit. It's inconsistent with the right to arbitrate. Well, let's look at the second factor. The second factor may help you. The degree to which the party seeking to compel arbitration has contested the merits of your claims. That's right, Your Honor. So they filed a motion to dismiss. They filed two motions to dismiss, the second one after appellees filed an amended complaint. They attempted to dispose of appellees' claims prior to filing a motion to compel arbitration. They're effectively trying to get a second bite of the apple, first bite with the district court in a motion to dismiss, and if they fail to dispose of the case that way, they then file the motion to compel arbitration. The third factor in the next three may not help you as much. Whether the moving party has informed its adversary of the intention to seek arbitration prior to filing a motion to do so. They provided you notice of the intent to compel arbitration by way of raising that defense in the answer to the complaint, did they not? Ten months after the complaint was filed, Your Honor, nothing prohibited them from giving us notice right when the complaint was filed. Time out. They're allowed to file a motion to dismiss under 12b-6, so they don't really have to file the answer to the complaint until after the court rules against it with regard to the motion to dismiss. That's correct, Your Honor, but they can inform us. They don't have to inform us via an answer. They can just tell us, look, there's an arbitration agreement. We intend to move to compel arbitration any time prior to filing the answer. I don't think that would help you. Within a month after it was denied, the motion to dismiss was denied, they put it in the answer to their complaint, and then two months later after that, they file a motion saying this should be arbitrated. Right, Your Honor, and only after a plaintiff has filed a motion for conditional certification of the FOSA action. Who knows how long an appellant would have waited to search right under the arbitration agreement. Furthermore, in those three months between the answer and the motion to dismiss, defendant acted, or I'm sorry, appellant acted inconsistent with its right to arbitrate. They participated in a Rule 16 conference. They joined discovery plans or discovery requests. The fourth factor is what kind of non-merits motions practice was there, and there was little to none. Your Honor, that's correct. Compared to the cases in which this Court has found that the right to arbitration has been waived, this would be on the low end of the motion practice. And in the filing, it's how much discovery is taking place, and the answer is none. They have exchanged discovery demands, but no, it's minimal. So it doesn't look as if they've waived the affirmative defense of compelling arbitration. I mean, if we were to rule in this case that you can file a motion to dismiss and it's denied nine months later, and within 30 days you file an answer that brings up the fact that they claim that these matters should be arbitrated, the consequences down the road of that are pretty scary for people later on. So I suppose what you'd have to do is we file a motion to dismiss, and by the way, prophylactically, we are going to tell you that we think this should be arbitrated. That's not the way the system normally works, does it? Your Honor, I'd point the Court to its decision regarding Pharmacy Bend Manager's antitrust litigation in which there was a 10-month delay, which is shorter than the 13-and-a-half-month delay here. The defendant filed a motion to dismiss and a motion for reconsideration. Well, what I'm saying to you, in one respect, there's really only a one-month delay. In this case, Your Honor? Yeah, they filed a motion to dismiss. If they filed a motion to dismiss and it was denied by the Court three weeks later, and then within 30 days they file an answer that says these claims should be arbitrated, do you think they'd have a problem? I think they should, Your Honor. One more timeout. Yes. They file a motion to dismiss under 12b-6.  They file an answer within 30 days, and that answer says, as one of the defenses, these matters should be arbitrated. You're telling me in that circumstance I just gave you that that's too late? Well, Your Honor, there is a case... I mean, that just falls into what I said. The consequences could be very bad, and you're saying next night it is done in. Well, Your Honor... And so the Court acts quickly. The totality of the circumstances in looking at these six factors, the motion to dismiss by itself does not waive the right to arbitration. It's the totality of the circumstances. It's the 13-and-a-half-month wait before filing a motion to compel arbitration. They could have done that at any time prior to or after we filed a complaint. In the cases in which this Court has held that there is no waiver, the plaintiffs or the defendants file the motions to compel within two months. Even after you arbitrate here, I mean, I'm just playing this out practically. If you arbitrated both under Medina, which is what it seems that it's saying, you still have your FSLA claims, FLSA claims in court afterwards, do you not? Your Honor, after the arbitrator decided any disputed provisions, then under Bell we'd be able to pursue... So what we're really talking about is where you go at the outset. That's right. I mean, your meal-break claims stem from your right to uninterrupted meal breaks, and that's conferred by the collective bargaining agreement, correct? A meal-break claim arises under the FLSA. How are the meal-break claims not arising under the collective bargaining agreement? Because the right to... An employer may not deduct time, 30 minutes of time, unless an employee is getting a bona fide meal break, which the fact that it's listed in the CBA... That sounds like something you would take to a union rep and complain right away. That's one option, but the employee in that situation has a separate and distinct right to bring it under the FLSA. It's a statutory right that arrives out of the FLSA. In a situation where an employee has both a claim under the FLSA and a claim for a violation of the CBA, that does not prevent the employee from seeking to pursue these claims. Your Honor, you heard your adversary. He says there's some significant issues for an arbitrator to consider. Why don't you tell us your position on that? Your Honor, I see no issues. The provisions that are stated in the CBA are not in dispute. Counsel argues that there's... Is this really as easily calculable as you seem to say it is? If you prevail, can a judge just as easily as an arbitrator come up with proper... without having to refer to the CBA, make the proper determination? Absolutely, Your Honor. For the meal break, there's factual determinations that need to be made that do not rely on any provision or any interpretation of the provision in the CBA. Questions are whether they had an uninterrupted meal break. If they did perform work, how much and how much time did they spend? And then did the employer know that they were doing this? Aren't those factual issues that are best left to an arbitrator? No, those are factual issues that are best left to the court, Your Honor. What would be suitable for an arbitrator is a disputed... is where there's a need to resolve a disputed interpretation of a CBA provision. In this case, there is no disputed interpretation that needs to be resolved. These claims exist wholly outside of the CBA. Let's go to the payment differential claims. Weren't they grandfathered from the predecessor to sober care? They may have been, Your Honor. So it doesn't... and if they just continue on, doesn't that in effect establish a custom or practice between the parties that's an implied term of the CBA? That may be correct, Your Honor, but I believe it's beside the point. Whether or not past practices, specifically referring to this differential, create an implied term of the CBA, the question remains, is it a disputed... is there a disputed interpretation of this implied provision? There's not. It either existed... the facts regarding this differential either exist or don't. They're either... the facts will show whether overtime was a component of the differential. It either is or isn't, and it's a fact of determination that needs to be made by the court. But there's no dispute over... if it's shown that it is an implied provision of the term of the CBA, that doesn't mean there's automatically a dispute about the interpretation of that provision. Could you help me understand the origin of raised differentials, who receives them, and how they are included in the paychecks? Absolutely, Your Honor. I believe the raised differential... we haven't conducted discovery, so my understanding is that the raised differential is literally a raise that some CNAs were given, including appellees, and it provides them with additional money per shift if they qualify. And when every raise, like most employees get, hourly raise, is that what it is? Yeah, I believe it's a way of giving them a raise in addition to their regular hourly pay. Between $1.25 and $3, right? That's right, Your Honor. Now, the raised differential, I believe, is $1.25, and then there's another thing in the paychecks called a differential, and that, I believe, is paid depending on when they work. The point is that these things are paid, and whether or not they should be included in the regular rate is something that is decided under the FOSA. It has nothing to do with the CPA. The FOSA requires that all remuneration that is not excluded under the FOSA or the Department of Labor regulations needs to be included in the regular rate and needs to be accounted for when the overtime rate is calculated. And these differentials were paid to appellees, and appellant failed to pay the moving time on them. And to go back to Judge Fuente's question, how do they look in the pay stuff, there is one type of differential reference in the CBA, the no-frills differential. And notably, in the pay subs, it breaks down, you know, the amount that's being paid for the straight time for that differential and the amount that's being paid for the overtime. And my clients are not seeking overtime pay for those differentials. The differentials they're seeking unpaid overtime wages for are just listed in the pay sub without any breakdown as to what's going towards straight time and what's going towards overtime. But tell me, can all your claims in this case be satisfied by just looking at pay subs? Pay subs and time records, Your Honor, that's the differential claim. Now, the meal break claim will require testimony from the CNAs regarding how often was your break interrupted, what did you do when the break was interrupted, how long did it take, and how can you prove that the employer was on notice that your breaks were being interrupted. If appellees can show that their supervisors knew that these breaks to go handle a patient's need were occurring and they were still deducting the 30 minutes from their pay, that was supposed to be an uninterrupted meal break, then appellees will prove their case regarding the meal break. Is an issue for arbitrator determining under the CBA what interrupted means? No, Your Honor. Whether an interruption of a meal break is enough to make it not bona fide is decided under the FLSA, the Department of Labor Regulations, and FLSA jurisprudence. Whether the CBA defines interruption as anything, and I don't believe the CBA does, is irrelevant. How was the interruption recorded? I'm sorry, Your Honor. How was it recorded? Somebody just gets up and runs into a room, a patient needs a lot of help, Your Honor, the CNAs are at their desk. I believe they'll testify that they were doing work. But call bell will go off and they'll run to help them. It's an important factual thing to state that these are nighttime CNAs. We don't have anything for the daytime CNAs and meal breaks. The nighttime CNAs, the nighttime is understaffed. So when a call bell goes off for a patient that needs something, they're usually the only one there to go get it. So their interruptions are more frequent. It sounds like a hearing in credibility issues. It may vary, Your Honor, but not something that a provision of the CBA would resolve. An interpretation of a provision of the CBA would resolve. Judge Shapiro, do you have a question? I just had a quick follow-up. I asked your adversary, I'm wondering if you can weigh in on it. I'm a little worried about the—if we were to send this back for arbitration, you haven't sent out notices yet. Are a lot of people going to lose their rights under the FLSA? Absolutely, Your Honor. Is there a way that can be protected? I'm just wondering procedurally how it can work. The district court could order equitable tolling, but the standard for that is very high under the case law. And I do not believe it covers procedural delays that the court finds are not improper. I think it should be emphasized that this is an FLSA collective action, and the rights of the punitive class, their statute of limitations continue to toll until they receive notice and sign a consent form. And the 13-and-a-half-month delay was a strategic decision. Thirteen-and-a-half months, filing a motion to dismiss and letting that time pass while the judge decides that, then waiting another three months until we file our motion for conditional cert. That's what prompted appellant to file a motion to compel arbitration at that time because the back was to the wall. There's a lot of prejudice in that. So you're saying that, maybe I got you wrong, but if you're saying if notices have not gone out, if we all agree, it's tolled until they go out? No, Your Honor, it's not tolled at all. Okay. Until someone gets a notice and then opts in. The statute's not tolled. Okay. So I think while I agree with counsel that under normal circumstances there's nothing really that can be done when there's procedural issues that delay, this goes to the Hawksworth factors in that it's causing extreme prejudice to the putative class. Okay. If any claim that imitates the FLSA must be brought in federal court, as you suggest, doesn't the arbitration clause become, in effect, meaningless? Your Honor, if an arbitration clause contains a clear waiver of a statutory right, it can require a plaintiff to arbitrate an FLSA claim and the Supreme Court rulings have held that FLSA claims can be arbitrated. But that's when the arbitration agreement mandates arbitration to resolve the FLSA claims. That's not an issue here. The issue here is whether there's a disputed interpretation of a CBA term that needs to be resolved by an arbitrator before it goes back to the court. Let me end with probably one more dumb question. You've got a dispute. The question is, who decides this dispute? Why is it more meaningful and beneficial to you to have that dispute decided in court as opposed to them by an arbitrator? Your Honor, these are because of the nature of the dispute. The disputes are factual. Well, the arbitrator is dealing with disputes like that all the time. Certainly with the wage rate claims, I'm sorry, the break claims, those appear to be covered directly by the collective bargaining agreement. Vadino says that in the event of a dispute, and they're talking about wage rate, which is the second issue here, under a collective bargaining agreement and a consequential claim under the overtime provision, if FLSA, the procedure we envision is to decide the contract interpretation issue through the grievance procedure to arbitration. That's right, Your Honor, a contract interpretation. There's no need to interpret the contract here. The claims exist fully outside of the CBA. Well, that's what you're arguing, and that's what Judge Hillman held. But if you, on the weight differentials, grandfathered them in from the predecessor, by implication are they not a matter included or subsumed within the CBA? Yes, Your Honor. Grandfathered in differentials that are not explicitly referenced in the CBA before the court may become implied terms of the provision, but they're not disputed. We don't dispute whether they're, there will be no dispute over whether they were grandfathered in, whether they were previously paid. So there's no disputed interpretation of this implied provision to be resolved. I mean, the problem you have is that prior to the early 1980s, arbitration wasn't supported as much by the Supreme Court as it became supported by the court when it decided in the Ray Moses Cone Memorial Hospital case in 83. And then there's one case after another after another. So they've dusted off this 1925 act, and they have said it's important as a means to resolve, probably because of all the complaints that people made with regard to how expensive and how time-consuming litigation is in this country. So isn't the trend against your position? Well, I think it's important to make the clear distinction that the appellant is not arguing that these claims need to be resolved through arbitration. There's no arbitration agreement before the court saying that these claims have to be resolved in arbitration, disposed of completely. What claims do have to be arbitrated then? None. The appellant is arguing that the only thing that needs to be arbitrated are the disputed interpretations of provisions, and they don't exist. The wage differential seems to be a disputed claim. The wage break seems to be a disputed claim. They're absolutely disputed. The claim itself, the facts of the claim are disputed. The appellant will argue, should this case work forward, that these interruptions did not occur. If they occurred, they were too short to declassify the meal break as a bona fide meal break, and that even if they were long enough interruptions, that the supervisors didn't know about it and therefore it's still not compensable. What you just said, that sounds like something an arbitrator can deal with any day of the week and twice on Sunday. That's not what's before the court. What's before the court is whether there's a disputed interpretation of a provision that needs to be arbitrated. What's not at issue here is whether these claims need to be arbitrated. An appellant will not make that argument that these claims need to be resolved, that the factual and legal disputes in this claim need to be resolved in arbitration. The appellant is only arguing that there are interpretations that need to be made of the provisions, and since there are interpretations that need to be made, the arbitrator is best positioned to resolve those disputed interpretations. Isn't that the answer that the union, if they so decide this is not something we want to take up for whatever reason, that's the end, isn't it, in terms of the CBA procedure? Absolutely, Your Honor, and that's a prospective waiver of a statutory right. The fact that the union, per the CBA, has a choice whether or not to spend the money to arbitrate these issues, if they indeed need to be arbitrated. But you didn't speak to the union to get that decision. I'm sorry, Your Honor? You didn't speak to the union to get that decision. We do not currently know whether or not they would go forward with arbitration on whatever issues need to be arbitrated. The point is, Your Honor, under the case law, the fact that they have the, that they control whether it goes forward with arbitration, makes the arbitration provision unenforceable because it's a prospective waiver of a statutory right. You came up thinking that arbitration is a whole lot more expeditious than you're proceeding the way that you're proceeding. Why are you afraid of arbitration? That's as far as the resolution. If appellant gets what appellant wants, the case will be put aside, the disputed provisions will go to arbitration and be resolved, and then the case will continue in court. So it takes even longer than just proceeding. It's the opposite of an expeditious speedy process. Thank you very much. Thank you, Your Honor. Mr. Weinberg. As you're coming up, it seems like the theme of Mr. Miller is that interpretations of the CBA are for the arbitrator, but if there are facts that need to be resolved, the CBA doesn't provide that those should be resolved by the arbitrator, and therefore they should be resolved by the court under the statutory FLSA provisions. That's a false dichotomy, a false distinction. If there's a dispute over whether the differential includes a component for overtime, yes, that's a factual issue. It's also an issue involving the interpretation of the collective bargaining agreement. That's what's at stake here. If the arbitrator rules it doesn't, that's one thing. If the arbitrator says some differential is included, that's another thing. This is a case of who decides it. That is in dispute. I'm surprised to hear that it's not. That, of course, is in dispute. Judge, that's what we hear. The whole FLSA cases, they say we didn't pay. That's what's in dispute. The Millbrae policy is also in dispute. It's not just a factual issue. It's an issue of what it is. An important question. Two very important things. First, we want the union done. It's a fast, expeditious process to go to arbitration. These issues will be decided quickly. If the union doesn't go to arbitration, there are rights that the employees have to sue the union. It's absolutely not true that the arbitration is enforceable because you have to go through the union. That's exactly what Bell said. You have to. I believe one of the judges before actually quoted that or said that. That's not accurate either. There is no strategic delay. We didn't ask the district judge to delay the suing. We followed the procedures. We gave him notice immediately. This is just the way and it answers the whole question. What can the employees do, the nurses do, to preserve their rights to bring FLSA claims when you've gone through arbitration and the statute of limitations is soon to pass? What can they do to preserve those rights under statutory? Well, Judge, if the statute of limitations passes, it passes. We can't do anything about that. I know something that was said here before. These were never raised with the union. It's not as if all these claims disappear. They don't disappear. You have a union representative. It's not that anybody's really prejudiced by this. These issues can be raised and should be raised during arbitration. That's why the whole process is there. And there really are factual disputes and disputes over policies. I mean, the whole action is certified as a collective action on the union break based upon the representation that there's only a 30-minute break. I think I asked you before. Is the concept of raised differential and shift differential incorporated into the collective bargaining agreement? Absolutely. It's part of the regular rate of pay. I think this was actually negotiated with the union, the whole concept of retaining it. There's a practice before this. There's no question it's a term of the CBA. It's conceded by the appellees. It's part of the CBA. It's something that has to be interpreted. And it should be a fast resolution, either we're right or we're wrong. And that should be. Then it becomes a mathematical calculation. But that's not the issue here. Is the issue here entitlement to a raised differential or a shift differential? It's not the issue of entitlement. It's the issue of a component, what that represents. The issue is on the $3 an hour weekend, we say $1 was for the overtime, $2 was for the extra. You're back to the math issue again. It's a math issue, but a math issue that has to be deterred. We say it's a math issue. They don't say it's a math issue. They say they didn't get any overtime. That's why we're here. If it were just a math issue, we wouldn't be here. That's not what the claim is. The claim is they didn't get paid any overtime for the differential. Otherwise, where are we at? We wouldn't be here. That's not the case. The case is there's a dispute over a very important factual issue, which is the predicate for the festival. And the same thing with the meal break. Maricop makes this very clear. It's the predominant benefit. The CDA does play an important part, and how the union views it and what was negotiated is an important factor. That's also compounded by the fact we can't even agree on what the meal break is and how long it is. Now, can the court now say that it's a 30-minute meal break? All along, they're right, it's a 30-minute meal break. Is that the court's province? We don't think so. We think that's the arbitrator's province, that's the union's province, and that's what the collective bargaining agreement is about. The case is about the regular rate. There's a definition for that in 29 U.S.C., right? Isn't that what this case is about? Part of the case it's about, yes. Not entirely. So federal reduction is not a condition? That would trump the collective bargaining agreement anyway, wouldn't it? A federal statute? Yes, but to interpret the federal statute, you have to first determine the predicates to see if it's a violation of the federal statute, and that requires an interpretation of the CBA. If, in fact, under your predominant benefit test, for example, if, in fact, it's a 35-60, let's say partisan, as we say it is, again in dispute, if we say it's a 60-minute break and you interrupt it for 15 minutes, is the 15-minute interruption part of the paid meal break or part of the unpaid meal break? Now, that can't be the, it should not be, based on Supreme Court law, the province of the district court to determine that. That has to be determined by the arbitrator, and that's what's at stake. Before you can get to the regular rate calculation, you have to determine the underlying predicates for that. And that's what this case is about, and that's why this case is important. It's important to note that the collective bargaining representative should be the one to decide these issues. It should be done through the collective bargaining process. The court is right. The Supreme Court has said arbitration is the preferred method, and that's what should be done here. Nobody's saying the filial rights are going to disappear. We wish that were the law, and maybe that will be the law. We invite it to be the law, but we're not saying it is. We're saying under Bell, the court then determines after these interpretations are resolved and these disputes, what's left under the Filsa claim, based on how the collective bargaining rule was interpreted by the arbitrator. Nobody's losing claims or rights under the Filsa. None of these plaintiffs are. So, if there's anything else. Thank you very much. Thank you to both counsel for those very representative arguments. And we would ask counsel if you would get together with the clerk's office and have a transcript prepared of this whole argument and to split the costs on that. Yes, thank you. No urgency.